Martin, J.
The makers and payee of each note are the *144 same. For convenience we will consider the note which reads:
“11,000. Chillicothe, 0., February 18th, 1878.
One year after date we, or either of us, promise to pay to the order of Mrs. J. J. Bangs one thousand dollars, for value received — with ten per cent, interest from date — ■
C. B. Thompson,
Vm. A. Jones,
J. P. Steeeev,
A. W. Thompson.5’
The answer of the suret}*- Jones merely alleges that after he signed the note it was altered, without his consent, by the addition of the words “ with ten per cent, interest from date.” By whom and when, whether before or after delivery, or with or without the knowledge of the principal or payee, is not stated. The plaintiff making no objection to the answer on account of this indefiniteness, put in a reply amounting to a general denial. On this issue alone the case went to a jury and testimony was given tending to show an alteration as charged in the answer. The defendant requested an instruction to the jury to the effect that if they found that the note had been altered as stated in the answer, then the note sued on was not the note he signed and the plaintiff cannot recover. This instruction the court properly refused to give. The charge given ivas “ that if the note was altered before delivery to the payee without her knowledge or consent, such alteration will not affect its validity in her hands.”
The only questions to be decided arise upon this charge. As applied to the note under consideration, the charge is to the effect that a material alteration of a complete note, made by the principal maker, before delivery and without the knowledge of the surety, does not discharge the surety, unless such alteration was made with the knowledge, consent or procurement of the payee. We think this charge is manifestly erroneous. We are sustained in this view by *145 numerous well considered adjudications: in New York, McGrath v. Clark, 56 N. Y., 34; Connecticut, Ætna National Bank v. Winchester, 43 Conn., 391; Massachusetts, Draper v. Wood, 112 Mass., 315 ; Pennsylvania, Fulmer v. Seitz, 58 Pa. St., 237; Maine, Waterman v. Vose, 43 Me., 504; Michigan, Bradley v. Mann, 37 Mich., 1; Indiana, Schueiwinde v. Hacket, 54 Ind., 248; Missouri, Frigg v. Taylor, 27 Mo., 245.
Many other authorities bearing directly on the point, from the same and other states, are cited in the able -brief of counsel for plaintiff in error. The alteration was certainly material. When it was signed by the surety the note bore no interest before maturity, and was for the payment of $1,000 and no more when due. As altered it drew interest from date and was for the payment of $1,060 at maturity'. It may be well to remark (although it is not an important circumstance,) that the note is joint and several. The principal was not a party to the action; and the plaintiff planted her case on the several promise of the surety. If the surety is bound, it is because of his promise. There is no intimation in the record that his alleged liability was assumed otherwise than by his written promise. When he signed and handed the note to his principal, he thereby authorized its delivery as it was then written. And he would have been bound accordingly to the - payee or any subsequent bond fide holder.
By the subsequent alteration its identity' was lost, and there arose another and distinct obligation' which he had not signed. To hold him bound by the new contract he must, in some way consistently with legal principles, be concluded by the act of his principal or other person in making the alteration. lie may' be thus concluded by authority previously' given, or by subsequent ratification, or by conduct on his part raising an estoppel. There is no claim made of subsequent ratification. And there is no suggestion of authority other than the mere fact that he entrusted the paper to his principal for negotiation. The principal had the custody' of the note with authority to deliver it. If the surety had parted with' the note, leav *146 ing a blank for the insertion of the amount or other material part, the custody of the note would have carried with it unrestricted authority to fill the blank accordingly. Fullerton v. Sturges, 4 Ohio St., 599. In this instance there was no blank to be filled. The surety carefully fixed in writing all the terms of his contract — the day of payment and the precise amount he was to pay. The note was complete when it left his hands, and conferred no authority on anybody to alter it.
Did the conduct of surety estop him from saying that the alteration was without his consent? The record of his conduct is brief. He signed the note at the request of his principal, and handed it to him for delivery to the payee. This is all of it. It was a single transaction incapable of being misunderstood.
It is claimed by learned counsel for the defendant in error that the surety here falls within the rule, “ Whenever one of two innocent parties must suffer by the act of a third, he who has enabled such person to occasion .the loss must sustain it.”
The application of this rule to the unauthorized alteration of a complete note by one of the promissors, before delivery, and without the knowledge of the other, is expressly denied in McGrath v. Clark and Ætna Natl. Bank v. Winchester, supra.
The construction of an instrument may, it is true, be so faulty as to afford exceptional facilities for alteration. And in such case negligence to some extent may be imputed to the maker. He may possibly be said to have enabled his co-maker to commit the forgery. Every such case must stand on- its own peculiar circ'umstances. In this record, however, we see no evidence of negligence on the part of the surety.
The alteration consisted of words added at the end of the note. In what respect was the surety negligent in not anticipating and preventing this crime ? He might, it is true, have drawn an elongated scroll from the end of the note before parting with it. If this was his duty, it was likewise his duty to have excluded the possibility of fraud *147 ulent alteration on any part of the space within the four corners. A construction of the rule which exacts such suspicious care, and requires the surety to regard his principal as a rogue, is untenable and wholly unsuited to the practical business methods of our people.
The case of Fullerton v. Sturges, supra, is confidently relied on by the defendant in error, as sustaining the position that the participation of the payee in a material alteration, before deliveiy, is necessary to avoid the note as to a surety who had no knowledge of, and had given no authority to make, the alteration. As we understand that case, the alteration consisted in affixing a seal to • the name of the surety before delivery and was wholly immaterial. Therefore, all that was said by the eminent judge who delivered the opinion on the law relating to a material alteration, is obiter.
It is insisted, however, on behalf of the defendant, that the error in the charge is immaterial because of the deficiencies of the answer.
To this we cannot accede. The answer set up a partial defense at least, and the intent was to state a full defense. The plaintiff claimed to have established by the testimony that the alteration was made under circumstances that would in law discharge the surety. The charge assumed that the testimony tended to show the alteration was made before delivery. Had there been a general or special verdict warranted by the testimony in favor of the defendant, it would have been the duty of the court to save the rights of the defendant by ordering an amendment of the pleading if necessary. The mere fact that the record does not affirmatively show that the defendant was prejudiced by the error in the charge is not important. It is sufficient that he may have been prejudiced. The testimony is not before us. Baldwin case, 1 Ohio St., 141; Railroad Company v. Stallman, 22 Ohio St., 1.
We consider it unnecessary, in view of what has been said, to comment on the other note described in the record.

Judgment of the district court reversed.